RAFAEL COLÓN ET AL., Plaintiffs and Appellants, *v.* ROTARY CLUB OF ARECIBO ET AL., Defendants and Appellees.

No. 8959.   Argued November 9, 1944.—Decided February 21, 1945.

*F. M. Susoni, Jr.,* and *Luis Mercader* for appellants. *Largé & Lecároz* and *Eduardo Pérez Casalduc* for appellees.

Mr. Justice de Jesús delivered the opinion of the court.

Manuel Oliver and his wife Dolores Ramírez leased a lot measuring 6,820 sq. m. to the Rotary Club of Arecibo. The contract of lease was executed on June 26, 1938, for a term of five years with an option to another five–year term for a monthly rent of $30. Early in August the Club began the construction of a building on the lot, which was finished by December of the same year, to be used as its clubhouse. Subsequently Manuel Oliver and Dolores Ramírez were divorced and the lot was adjudicated in its entirety to the husband who by a deed of December 16, 1941, before Notary Antonio Lens Cuena, segregated a parcel of 1,461 square meters precisely where the Rotary Club house was located and sold the lot to Rafael and Amado Colón for $4,383. Upon describing in the deed of sale the parcel of 1,461 meters, it was stated that on the lot there was a building devoted to clubhouse and that the property sold was subject to a contract of lease in favor of the Rotary Club.

Considering themselves owners of the lot and the building, Rafael and Amado Colón brought an action of unlawful detainer against the club for the recovery of the house and lot. The District Court of Arecibo dismissed the complaint and its judgment was affirmed by this court. *Colón* v. *Rotary Club of Arecibo,* 60 P.R.R. 734. Thereupon Rafael and Amado Colón brought an action of revendication against the Rotary Club and Manuel Oliver, seeking that judgment be rendered against the former declaring the plaintiffs sole owners of the lot and building and ordering the club to pay as damages the rentals which plaintiffs had failed to receive at the rate of $75 monthly, since February 1, 1942, together with costs and attorney's fees, and that the club and Manuel Oliver be adjudged to deliver jointly the property to the plaintiffs.

The lower court rendered judgment on the merits, on the ground that the action of revendication did not lie nor could ding, Rafael and Amado Colón brought an action of unlaw- to any action that plaintiffs might bring against Oliver arising from the contract of December 16, 1941.

██ In the present case the plaintiffs lay great stress on the fact that the house built by the club constitutes an improvement (*mejora*), and that as such it belonged to the lessor Oliver who upon selling the lot to plaintiffs also conveyed his title to the building. In support to their theory that the house is an improvement, the plaintiffs attempted to prove that in order to build it, the club availed itself of some concrete pillars and a concrete slab which were on the lot prior to the execution of the lease contract. To this end, they introduced in evidence the construction plat that the club had filed with the Department of Health,wherein the work to be made was described as a reconstruction. This evidence, as the lower judge held, was successfully met by that of the club, which proved that on the lot there had been a building many years ago, which was destroyed by fire in 1929; that thereafter, Andrés Oliver, a subsequent owner of the piece of land, constructed a building on the ruins of the former, devoting it to a candy factory, the said building being destroyed by a hurricane over 13 years ago, leaving the ruins mentioned by the plaintiffs which consisted of some pillars which had been rendered useless by effect of fire and the operation of weather, being at a short distance from the sea for more than 9 years, and the rest of them had been thrown down by the hurricane; that the concrete slab was cracked due to the same causes; and that after the lease had been agreed upon, the Rotary Club with Oliver's consent, built the house on its own account. As to the plat filed in the Department of Health, the club introduced evidence tending to show that although it described the work to be made as a reconstruction, the constructing engineer after having carefully examined the materials, used said ruins to

very little advantage and actually constructed a new building at an approximate cost of $6,000 excluding the value of the slab and some of the pillars which he repaired.

That the building was not an improvement which passed to the owner of the lot at the termination of the contract of lease was sufficiently established by the fact that the club as well as the owner of the lot considered the building as the exclusive property of the club. This conclusion is supported by a letter of January 24, 1944, addressed by Oliver to the Secretary of the Club, José Pérez Paredes, wherein he complained that the club was not punctually paying the rentals and closed his letter with the following paragraph:

"I also wish to inform you that if your club is interested on the lot which it actually occupies I am willing to sell it at $2.25 a meter, or if on the contrary you wish to sell the building I am also willing to buy it at a reasonable price of appraisal."[1]

---

[1] One of plaintiff's attorneys expressly accepted when the letter was offered in evidence, that the same had been signed by Oliver on the date stated in the letter, but he objected to its admission because in his opinion it could not prejudice the plaintiffs.

Section 1181 of the Civil Code, 1930 ed., on which appellant's attorneys undoubtedly based their objection, reads in its pertinent part as follows:

"The date of a private instrument shall be considered, with regard to third persons, only from the date on which it may have been filed or entered in a public registry, from the death of any of those who signed it, or from the date on which it may have been delivered to a public official by virtue of his office."

Commenting on § 1227 of the Spanish Civil Code, which is identical to the above-quoted § 1181 of our Code, and after explaining the reasons for the legal provision which is to insure that the date is correct, thereby avoiding fraud to third persons by antedating a document, Manresa says:

"With respect to third persons, the law limits the effects of a private document to the element which is more readily proved: as to the date, instead of relying on what the document says, it is determined by taking into account other facts or public documents connected with the parties, without granting any weight to the date expressed in said document, as regard third persons.

"   *         *         *         *         *         *         *

"The incorporation or recordation in a public registry means for this purpose, any entry more or less brief, which will sufficiently give an unequivocal idea of the document sought to be recorded, since the object is to authenticate the date and not the contents of the document.

"   *         *         *         *         *         *         *

The evidence further shows that at the time the plaintiffs bought the lot of 1,461 meters from defendant Oliver, the building which they now seek to recover did not appear from the registry. It was in the deed of sale that the building was mentioned for the first time. Since the registry does not show that at the time that the plaintiffs bought the lot, the vendor was the owner of the building, they can not invoke the status of third persons under the Mortgage Law, since they did not acquire the building from the person who, according to the registry, was entitled to sell it. Since said circumstance does not appear from the registry, the status of the plaintiffs is that of third persons under the Civil Code and as such they may only acquire from the vendor what the latter may legally convey to them. Since Oliver is not the owner of the building, even though he had attempted to sell it by deed, he had no title over it which he could legally convey to the purchaser. Furthermore, inasmuch as the building was constructed with the consent of the owner of the lot under the conditions already stated, the club is a *bona fide* builder whose title to the building has been expressly acknowledged by Oliver, the former owner of the

---

"As to the delivery of a document to a public officer, when the law requires it by reason of his office, it is logically understood that it should be delivered for such purposes and in such manner that the latter, in his capacity of officer, may establish its authenticity, by acts, deeds, or documents inherent to his office and not particularly as a witness.

"In our opinion it is unquestionable that outside of those grounds set forth in the Civil Code as to the meaning and authenticity, another can be admitted; the existence of an act by which a third person gains true knowledge of the existence of a document, as service on him, *or even in the absence of said service, if he acknowledges its existence.* This is based on the simple rule that no person may contradict his own acts, and on the fact that by such admission the purpose of this section has been attained. The date shall be the one appearing on those notices to the third person or that of the acknowledgment by the latter, *unless in the latter case, the former should also agree to accept as true the date stated on the document in question.*" (Italics ours.) Manresa, *Comentarios al Código Civil Español* (2d ed., 1907), vol. VIII, pp. 501, 502, 503.

Taking into account the admissions of appellant's attorney we are of the opinion that § 1181 of the Civil Code was substantially complied with and therefore that the letter was admissible in evidence.

lot. Under these circumstances, §§ 297 and 382 of the Civil Code are applicable. They provide as follows:

"Section 297. The owner of the land which has been built upon, sown, or planted in good faith, has the right to appropriate as his own, the work, sowing or planting, by previously paying the indemnity specified in sections 382 and 383 of this Code, and to oblige the person who has built or planted to pay him the value of the land, and the person who sowed, to pay the corresponding rent."

"Section 382. Necessary expenses are refunded to every possessor; but only the possessor in good faith may retain a thing until such expenses are made good to him.

"Useful expenses are refunded to the possessor in good faith with the same right or retention, it being at the option of the party who has defeated him in his possession to refund the amount of the expenses or to pay the increase in the value of the thing in consequence of such expenses."

See the discussion on the scope of these Sections in *Rivera* v. *Santiago*, 56 P.R.R. 361.

The defendant club admits in its answer the existence of the deed of sale and alleges that it possesses the lot under a lease, and the building as owner. It contends however, that with respect to the lot it was stated in the deed of sale that it was subject to a contract of lease, and that before the expiration of the first term of 5 years of lease it notified Oliver that it had decided to extend the lease under the option agreed to. The fact that in the deed of sale it was stated that the property was subject to a contract of lease in favor of the club, and that upon recording the deed it was mentioned in the registry, did not prejudice the appellants, inasmuch as pursuant to § 1439 of the Civil Code leases of real property which are not duly recorded in the registry of property shall be of no effect with regard to third persons. The sole purpose of inserting that clause in the deed was to notify the purchaser that there existed a contract of lease of which they had previous knowledge. That mention in the registry did not constitute a record of the lease but simply a mention of a personal obligation.

Apart from the fact that on March 26, 1943, when Oliver was notified by the club of the extension of the lease, the land had already been sold to the appellants since 1941, and Oliver was therefore unable to extend the lease as to the parcel sold to the plaintiffs, § 1461 of the Civil Code provides that the purchaser of a leased property has a right to terminate the lease in force at the time of making the sale, unless the contrary is stipulated, and subject to the provisions of the Mortgage Law. In the present case there was no agreement to the contrary and the Mortgage Law is not applicable inasmuch as the lease was not recorded and the purchasers, appellants herein, notified the club that they had decided to terminate the lease which the club had, and required them to vacate the lot and the building. In these circumstances, the appellants were entitled, as owners of the lot to recover the lot and building from the club provided they paid to the club the materials and labor invested in the building, the latter being entitled to retain possession of the building until both labor and materials were paid. But as we held in *Rivera* v. *Santiago, supra,* it is not indispensable to prosecute two actions, one to fix the amount of compensation and another to recover the building. A single action may serve to fix the amount of the compensation and, after payment thereof, to obtain the building pursuant to §§ 297 and 382 of the Civil Code. In the present case the plaintiffs have not chosen to pay said compensation to the club but, on the contrary, they seek to dispossess the club of its property without compensation. It being so, the action brought by the plaintiffs with regard to the building does not lie, yet it is the proper one to recover the lot.

For the foregoing reasons the judgment appealed from is modified in the sense of declaring the appellants owners of the lot in question and entitled to obtain the building, but only after the club receives payment of the cost of materials and labor invested in the construction, and as thus modified the judgment is affirmed.